15 CV 02237

PREET BHARARA
United States Attorney for the
Southern District of New York
By: Christine M. Magdo
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-2297

RECEIVED
MAR 24 2015
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

    - v -

$6,152,285.88 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT AT FIRST BANK OF
DELAWARE, PHILADELPHIA, PENNSYLVANIA,
IN ACCOUNT NUMBERED 9016139,

        Defendant-in-rem.
------------------------------------x

VERIFIED COMPLAINT

15 Civ.

       Plaintiff United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, for its verified complaint alleges upon information and belief as follows:

## Introduction

       1.   From at least in or about 2006, and continuing through in or about 2011, a number of illegal internet gambling businesses, although typically based offshore, predominantly served players based in the United States. These gambling

1

businesses offered "real money" casino games, poker, and sports betting to United States players, in violation of multiple federal criminal statutes including but not limited to 18 U.S.C. § 1084 (making it unlawful to use a wire in connection with placing a bet or wager), § 1955 (making it illegal to operate an illegal gambling business) and §§ 1956 and 1957 (money laundering).

  2. Although illegal internet gambling companies kept their computer servers, management and support staff offshore, they relied on the United States financial system both to obtain money from gamblers and to pay those gamblers who wished to withdraw funds from the online gambling companies. However, because United States financial institutions generally refused to handle financial transactions that they knew to be related to illegal internet gambling, the offshore internet gambling companies and the payment processors who served them must, as a matter of course, have made false representations to United States financial institutions in order to conduct these transactions.

  3. The leading internet gambling companies hired processing companies who had the ability to withdraw funds directly from United States consumers' bank accounts through a process known as the Automated Clearinghouse (or "ACH") system. The ACH system, which is administered by the Federal Reserve,

allows for fast and efficient electronic funds transfers to and from individuals' checking accounts through "e-checks" or "electronic checks." Payment processing companies with access to the ACH system can "pull" money from individual consumer bank accounts (i.e. debit the consumer's account) and route it to gambling companies (typically based abroad) and "push" money from the gambling companies into individual checking accounts to pay winnings (i.e. credit the consumer's account). The gambling companies relied on these payment processors with access to the ACH system because Visa and Mastercard made it difficult for the United States residents to fund gambling transactions with credit cards.

    4.  Because United States banks could not lawfully process ACH payments relating to illegal online gambling, the payment processing companies hired by the offshore internet gambling companies took steps to deceive financial institutions in order to induce them to allow such ACH processing. For example, external payment processors created phoney non-gambling internet businesses (complete with web pages, and in many cases corporate formalities), represented to banks that they are processing on behalf of these businesses, and employed "descriptors" for the transactions that would be transmitted through the ACH system that identified the transactions as being for various non-gambling web merchants. The "descriptors" would

appear as text on the customer's bank statement--and be seen by the customer's bank--and would therefore make the transactions appear to relate to something other than gambling.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

6. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture of the Defendant-in-rem took place in the Southern District of New York, and, pursuant to 28 U.S.C. § 1395, because the Defendant-in-rem is located in the Southern District of New York, and because this action concerning the Defendant-in-rem accrued in the Southern District of New York.

## The Defendant Currency

7. On or about November 12, 2010, the United States Attorney's Office for the Southern District of New York directed First Bank of Delaware, pursuant to Title 18, United States Code, Section 981(b)(2)(B), to freeze the accounts of a payment processor, specifically, Electronic Payment Exchange ("EPX") to prevent the funds in these EXP accounts from being dissipated or transferred by EPX. Approximately $6,152,285.88 from the EPX accounts was ultimately blocked by First Bank of Delaware (the "Defendant Currency"). The Defendant Currency was then transferred to a segregated account, Account Number 9016139

4

located at First Bank of Delaware (the "EPX Segregated Account").

8. On or about December 1, 2010, a seizure warrant was executed by Magistrate Judge Ronald L. Ellis finding probable cause that the Defendant Currency is proceeds subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 981(b), 984, and 1955 and authorizing law enforcement to seize the Defendant Currency. *See,* 10 Mag. 2701.

9. The Defendant Currency formerly on deposit in the EPX Segregated Account was seized by the United States Marshals Service ("USMS") and deposited in the Seized Asset Deposit Fund Account with the Federal Reserve Bank.

### The Defendant Currency is Subject to Forfeiture

10. EPX is a company based in Wilmington, Delaware, that provides third-party payment processing services to First Bank of Delaware ("FBOD"). In connection with providing such services, EPX held accounts numbered 9012893 (the "EPX Settlement Account") and 9012907 (the "EPX Reserve Account") at FBOD (collectively, the "EPX Accounts").

11. MAS, Inc. ("MAS") was EPX's largest customer. According to EPX's records, MAS is an "e-commerce" company located in Honolulu, Hawaii. In fact, MAS processed payments in for illegal internet gambling businesses and their customers.

5

12. In the month of July 2010, MAS originated 338,914 transactions totaling $15,264,414.05, out of $59,954,678.30 by all EPX customers. In August 2010, MAS originated 471,191 transactions totaling $21,696,007.46, out of $56,952,855.89 by all EPX customers. In September 2010, MAS originated 487,123 transactions totaling $21,047,054, out of $55,660,215 by all EPX customers. There are approximately thousands of transactions each business day, some debiting customer accounts (collecting money) and some crediting customer accounts (paying money out).

13. In or about July 2010, a confidential informant ("CI") transferred the sum of $21 to an online poker account with Full Tilt Poker, one of the largest online real-money poker sites in the world. Afterwards, an ACH transaction in the amount of $21 with the descriptor "AUTOMATED DEBIT MAS 8773094831" posted to the CI's account from which the money was transferred. In or about July 2010, the CI withdrew the sum of $100 from an online poker account with Full Tilt Poker. Afterwards, the CI's bank account designated to receive the deposit received an ACH deposit with the descriptor "AUTOMATED CREDIT MAS 8773094831." The originating bank for both ACH transactions was the FBOD.

14. The transactions that MAS conducted through EPX had characteristics consistent with transactions for internet gambling payment processors, including the following: the debit

transactions are all identified with the ACH code "WEB" for internet-based transactions; the customer accounts are almost all in the names of individuals, rather than companies; the majority of transactions are in even dollar amounts, such as $10, $25, or $50 with the most common transaction size being a $10 debit and a credits range typically of $10 to $100 but no higher than $2,500; and a credits range up to $1500.

### FIRST CLAIM FOR FORFEITURE

15. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of...section 1956...of this title, or any property traceable to such property."

16. Title 18, United States Code, Section 1956(a)(2) provides, in pertinent part, that: "Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--(A) with the intent to promote the carrying on of specified unlawful activity" shall be guilty of a crime.

17. Title 18, United States Code, Section 1956(c)(7)(A) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense

7

listed in section 1961(1) of this title". Included among the enumerated offenses in 18 U.S.C. § 1961(1) is 18 U.S.C. § 1955, which prohibits the operating of illegal gambling businesses, 18 U.S.C. § 1084, and racketeering activity, which includes any act or threat involving gambling, which is chargeable under State law and punishable by imprisonment for more than one year.

18. As demonstrated by the Verified Complaint, there is probable cause to believe that the Defendant Currency is subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(A) because the Defendant Currency constitutes property involved in money laundering.

## SECOND CLAIM FOR FORFEITURE

19. Incorporated herein are the allegations contained in paragraphs 1 through 14 of this Verified Complaint.

20. Title 18 U.S.C. Section 981(a)(1)(C) subjects to forfeiture: "Any property, real or personal, which constitutes or is derived from proceeds traceable to...any offense constituting 'specific unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

21. Again, as noted in paragraph 17, supra, 18 U.S.C. § 1956(c)(7)(A) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense

listed in section 1961(1) of this title," and § 1961(1) includes 18 U.S.C. §§ 1955 and 1084 among the enumerated offenses.

22. Section 1961(1) of Title 18, United States Code, also lists bank fraud in violation of Title 18, United States Code, Section 1344. Section 1344 provides, in pertinent part, that: "Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises", shall be guilty of a crime.

23. As demonstrated by the Verified Complaint, there is probable cause to believe that the Defendant Currency is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) because the Defendant Currency constitutes or is derived from proceeds traceable to the commission of bank fraud.

### THIRD CLAIM FOR FORFEITURE

24. Incorporated herein are the allegations contained in paragraphs 1 through 14 of this Verified Complaint.

25. Title 18 U.S.C. Section 1955 prohibits internet gambling and has its own forfeiture provision. Specifically, § 1955(d) provides that "[a]ny property, including money, used in

violation of the provisions of this section may be seized and forfeited to the United States."

26. As demonstrated by the Verified Complaint, there is probable cause to believe that the Defendant Currency is subject to forfeiture pursuant to Title 18, United States Code, Section 1955 as property used in internet gambling.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Currency and that all persons having an interest in the Defendant Currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated:   March 24, 2015
         New York, New York

                                PREET BHARARA
                                United States Attorney for
                                Plaintiff United States of America

                         By: /s/ Christine Magdo
                                Christine I. Magdo
                                Assistant United States Attorney
                                One St. Andrew's Plaza
                                New York, New York 10007
                                (212) 637-2297

## VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK             )
SOUTHERN DISTRICT OF NEW YORK  )

JOHN T. TANGEN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and, as such, has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge, information, and belief.

The sources of the deponent's information and the grounds for her belief are his personal knowledge and the official records and files of the United States Government.

Dated:  New York, New York
        March 23, 2015

                                    _____
                                    JOHN J. TANGEN
                                    Special Agent
                                    Federal Bureau of Investigation

Sworn to before me this
23 day of March, 2015

_Caroline Gilmore_
Notary Public

CAROLINE GILMORE
Notary Public - State of New York
No. 01GI6170912
Qualified in Westchester County
My Commission Expires July 23, 2015

11